UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EUGENE F. ALLEN, JR., <br> *Plaintiff*, <br><br> vs. <br><br> JO ANNE B. BARNHART, <br> Commissioner, Social Security Administration <br> *Defendant*. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION H-05-1962 |

**OPINION ON SUMMARY JUDGMENT**

Plaintiff Eugene Allen filed this action for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration of Allen's claim for disability insurance benefits under the Social Security Act. Before the court are cross motions for summary judgment filed by the parties. (Dkt. Nos. 10, 11). For the following reasons the Commissioner's decision denying benefits is REVERSED and REMANDED.

**I.   BACKGROUND**

    **A.   Procedural History**

Allen filed an initial application for disability insurance benefits under Title II of the Social Security Act with the Social Security Administration on August 31, 2001 (Tr. 52).[1] Allen contends he is disabled and has been unable to work since February 8, 2001. (Tr. 53). After Allen's application was denied at the initial and reconsideration levels (Tr. 41, 62), Allen requested a hearing before an administrative law judge ("ALJ"), which was held on September 23, 2003. (Tr. 52). In a decision dated September 26, 2003, the ALJ denied Allen's application for disability benefits, finding that Allen was not disabled as defined by the Act. (Tr. 52-62). The Appeals Council

---

[1]The transcript of the administrative record will be cited as "Tr. __".

approved the ALJ's decision on December 10, 2004, thereby transforming it into the final decision of the Commissioner. (Tr. 41). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

    **B.**    **Factual History**

Allen was 51 years of age at the time of the hearing. (Tr. 53). Allen's past relevant work experience includes employment as a computer repairer, a warehouse manager, an automobile mechanic, and a delivery driver. (Tr. 53). The administrative hearing was held on September 23, 2003. (Tr. 52). Allen was present and testified, and was represented by counsel. (Tr. 2). At the hearing, the ALJ reviewed the medical record and heard testimony from Allen. (Tr. 52-62). In his testimony, Allen alleged he was disabled due to congestive heart failure, chronic obstructive pulmonary disease, coronary artery disease, peripheral vascular disease, bursitis, and liver disease. (Tr. 53).

After reviewing the evidence, the ALJ determined that Allen was not disabled within the meaning of the Social Security Act. At step one, the ALJ found Allen had not engaged in substantial gainful activity since the alleged onset date of the disability on February 8, 2001. (Tr. 53 ). At step two, the ALJ found that Allen possessed the medically determinable impairments of coronary artery disease, chronic obstructive pulmonary disease, and a history of congestive heart failure, and that these impairments were severe since they imposed more than a minimal or slight limitation on his ability to perform basic work related activities. (Tr. 54). At step three, however, the ALJ concluded these impairments or a combination of impairments did not satisfy the severity requirement of Appendix 1, Subpart P, Regulation No. 4 ("Listings") that when coupled with the duration requirement of 20 C.F.R. § 404.1509 would have resulted in the presumption of a disability. (Tr. 54-56). At the fourth step, the ALJ found Allen possessed the residual functional capacity to perform his past relevant work

as a parts manager; a computer repairer/electronic technician; a delivery driver, light; or an automobile mechanic. (Tr. 61). The ALJ further determined that had Allen not been able to perform the demands of his past relevant work, his disability claim would have failed at step five, because Rule 202.22, Appendix 2, Subpart P, Regulation No. 4, directed the conclusion that there were a significant number of jobs Allen could still perform existing in the national economy. (Tr. 61). Thus, the ALJ held Allen was not disabled and not entitled to disability benefits under sections 216(i) and 223 of the Social Security Act. (Tr. 62).

## II.     APPLICABLE LAW

### A.     Standard of Review

In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). The federal courts review the Commissioner's denial of Social Security benefits to ascertain whether (1) the final decision is supported by substantial evidence, and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005). "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is 'more than a mere scintilla and less than a preponderance.'" *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).

"In applying the substantial evidence standard, the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgement for the Commissioner's." *Perez*, 415 F.3d at 461. "If the Commissioner's fact findings are supported by

substantial evidence, they are conclusive." *Id*. "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Id*. The court does not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Myers* v. *Apfel*, 238 F.3d 617, 619 (5th Cir. 2001). The courts strive for judicial review that is deferential but not so obsequious as to be meaningless. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

      **B.**      <u>**Standard for Determining Disability under the Act**</u>

The Act authorizes payment of disability insurance benefits and supplemental security income to individuals with disabilities. *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The mere presence of an impairment does not necessarily establish a disability. *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). A claimant is disabled only if he is incapable of engaging in any "substantial gainful activity," which is defined as "'work activity involving significant physical or mental abilities for pay or profit.'" *Perez*, 415 F.3d at 461(quoting *Newton v. Apfel*, 209 F.3d 448, 452-53 (5th Cir. 2000)).

To determine whether the claimant is, in fact, disabled, the ALJ follows a five-step analysis outlined in 20 C.F.R. § 416.920(a). First, the claimant must not be presently engaged in substantial gainful activity. Second, a claimant must have an impairment or combination of impairments

significantly limiting his physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations. If so, he is presumed disabled and is entitled to benefits without further inquiry. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Fifth, the impairment must prevent him from doing any other work. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

The claimant bears the burden of proof under the first four steps. If the claimant successfully carries that burden, the burden shifts to the Commissioner in step five to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. If the Commissioner successfully makes that showing, the burden shifts back to the claimant to prove that he cannot perform the alternative work suggested. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Masterson*, 309 F.3d at 272.

### III. ANALYSIS

#### A. Step Four

Allen mounts the following challenges to the ALJ's decision at step four of the evaluation process: (1) that the ALJ failed to apply the proper legal standard of Social Security Ruling (SSR) 82-59 to Allen's failure to stop smoking; (2) that the ALJ's residual functional capacity (RFC) analysis was not supported by substantial evidence; (3) that the ALJ's vocational analysis was not supported by substantial evidence because of the failure to call a vocational expert; (4) that the ALJ did not accord "great weight" to Allen's disability determination by the Veterans' Administration; and (5) that

the Appeals Council failed to reverse on the basis of a new and material post-hearing medical source statement.

### i.     Applying incorrect legal standard to issue of smoking

Allen contends that the ALJ applied the incorrect legal standard to the issue of Allen's failure to stop smoking, and used this failure as a reason for denying disability. Specifically, Allen argues that the ALJ's reliance on *Fletcher v. Califano*, 471 F. Supp. 317 (N.D. Tex. 1979) was unfounded. The *Fletcher* court concluded that "[f]ailure to stop smoking mitigates[2] against a finding of disability where shortness of breath is alleged." *Id.* at 320. Allen argues his failure should have been analyzed under the auspices of SSR 82-59 and 20 C.F.R. § 404.1530. SSR 82-59 governs the failure to follow prescribed treatment in evaluating disability under Titles II and XVI of the Social Security Act. In general the Ruling holds that:

> [a]n individual who would otherwise be found to be under disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot by virtue of such "failure" be found to be under a disability.

S.S.R. 82-59 (1982). Similarly, 20 C.F.R. § 404.1530, addresses the need to follow prescribed treatment.

Allen argues that both SSR 82-59 and 20 C.F.R. § 404.1530 constitute "precedent final opinion" that is "binding on all components of the Social Security Administration" pursuant to 20

---

[2] The wording in *Fletcher* differs slightly from the wording used in the ALJ's ruling and the parties' briefs. The *Fletcher* opinion uses the word "mitigate" while the ALJ's ruling and the petitioner's brief use the word "militate". *Fletcher*, 471 F. Supp. at 320; Pl.'s Br. at 12; Tr. at 15. The meaning is synonymous. *Mitigate* is sometimes used as an intransitive (followed by against) where *militate* might be expected.

C.F.R. § 402.35(b)(1). (Pl.'s. Br. at 13).[3] Therefore, both regulations supersede the precedential authority of *Fletcher* and should have been in applied in *Fletcher*'s stead. This argument is without merit, however, as it fails to recognize that SSR 82-59 only applies where a claimant has already been determined to be disabled, which is not the case here.

SSR 82-59 states that the SSA may make a determination that an individual has failed to follow prescribed treatment only where certain conditions exist. S.S.R. 82-59 (1982). One such condition is that the evidence establish that "the individual's impairment precludes engaging in any substantial gainful activity (SGA) . . . ." *Id*. In the instant case, however, the ALJ determined that Allen was not precluded from engaging in any substantial gainful activity. (Tr. 62) ("The claimant [Allen] has the residual functional capacity to perform a light level of work activity."). Furthermore, the ALJ's conclusion concerning Allen's RFC was based on substantial evidence supported by his examination of the record as a whole. In addition to considering Allen's breathing impairments, the ALJ considered medical records and testimony with respect to Allen's range of movement, neurological ability, strength, mental state, functional limitations, daily activities, and work history. (Tr. 58-60). The ALJ's analysis was consistent with 20 C.F.R. § 404.1545 which states "residual functional capacity is based on all the relevant evidence in [the claimant's] case record," and existing precedent. 20 C.F.R. § 404.1545(a)(1).

The ALJ noted in his determination that Allen reported that he could cook breakfast, work in the yard, wash clothes, cook supper, drive once a week, occasionally shop with his wife, and perform normal activities for exercise. (Tr. 59); *see Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995)

---

[3]Plaintiff's brief will be cited as "Pl.'s Br. at __"

("It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status,") (citing *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990)).  In *Legget* the Fifth Circuit denied a finding of disability in part on evidence that the claimant was able to care for his "three daughters, perform household chores, cut the grass in small increments, and even walk up to six blocks at a time." *Legget*, 67 F.3d at 565.  Similarly, in *Vaughan v. Shalala*, 58 F.3d 129, 131-32 (5th Cir. 1995), the Fifth Circuit sustained a finding of disability in part on evidence that the claimant could maintain social contacts, drive, perform household chores such as cooking, making the bed, and washing. *See also Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992) (claimant's disability claim denied where she could visit family and friends, attend church, dress and bathe herself, prepare lunch, and drive once or twice a week).

In addition to his analysis of Allen's daily activities, the ALJ also examined Allen's medical record, and ultimately concluded that "despite [Allen's] allegations of disabling impairments, the medical record establishes that [Allen] has received only sporadic treatment which has been essentially routine in nature . . . ." (Tr. 58-60).  The Fifth Circuit has held that medical records coupled with evidence of daily activities are sufficient to constitute substantial evidence for determining a claimant's RFC. *See Brooks v. Barnhart*, 128 Fed. Appx. 344 (5th Cir. 2005) (unpublished).  In *Brooks* the Fifth Circuit held that:

> [t]he ALJ determination regarding [claimant's] residual functional capacity . . . was also supported by substantial evidence.  In addition to [the claimant's] medical records, evidence of [the claimant's] daily activities, including cleaning, cooking, shopping, child care, and personal care, indicated that [the claimant] had adequate residual functional capacity to perform at least sedentary work.

*Id*. The ALJ's reliance upon the court's holding in *Fletcher* was merely one factor among many considered. Thus, the ALJ applied the proper legal standard, and his determination as to Allen's ability to perform substantial gainful activity precluded the application of SSR 82-59.

Furthermore, the case cited by Allen in support of his contention, *Ray v. Heckler*, 1985 WL 71727 (W.D. Ky.), is distinguishable from *Fletcher* and the instant case. In *Ray* four physicians stated that the claimant's pulmonary condition rendered her completely disabled, and no other conclusion was reasonable considering the record as a whole. *Id*. Thus, the sole issue presented was "whether the plaintiff's failure to stop smoking completely, as instructed by her physician, dictates a conclusion of nondisability for failure to follow prescribed treatment." *Id*. In *Fletcher*, as in this case, the issue of the claimant's failure to stop smoking was merely one factor of many analyzed by the ALJ in a disability determination. *See Fletcher*, 471 F. Supp. 317 (N.D. Tex. 1979). Thus, the ALJ's use of *Fletcher* was appropriate.

    **ii.**    **Failure to Assess or Account for Environmental Restrictions**

Allen next contends that the ALJ failed to properly assess and account for Allen's nonexertional limitations in his RFC holding. 20 C.F.R. § 404.1545(e) provides that when a claimant has a severe impairment(s), but does not satisfy those of a listed impairment(s), an ALJ must consider the limiting effects of all impairments, even those that are not severe in determining residual functional capacity. These impairments may result in both exertional and nonexertional limitations and restrictions that limit the ability of an individual to meet certain job demands. 20 C.F.R. § 404.1569a(a). Nonexertional limitations or restrictions may include difficulty tolerating some features of certain work settings such as dust or fumes. 20 C.F.R. § 404.1569a(c)(1)(v). SSR 96-9p holds that restrictions to avoid exposure

to odors or dust are environmental restrictions that must "be evaluated on an individual basis. The RFC assessment must specify which environments are restricted and state the extent of the restriction . . . ." S.S.R. 96-9p (1996). Allen argues that since the ALJ determined he possessed severe impairments that did not satisfy those of a listed impairment, the ALJ should have evaluated and noted Allen's nonexertional environmental restrictions in his RFC determination. (Tr. 54). This contention is unfounded.

The ALJ specifically determined in this RFC assessment that Allen had "the residual functional capacity to perform a light level of work activity." (Tr. 62). SSR 96-9p only applies to the effect of an RFC "assessment for less than a full range of sedentary work on an individual's ability to do other work." *Id*; *see Gutierrez v. Barnhart*, 2005 WL 1994289 (5th Cir. 2005) (unpublished) (finding claimant's argument was without merit because SSR 96-9p requires a nonexertional limitation *combined* with a sedentary recommendation). "Furthermore, Social Security Ruling 96-9p applies during the fifth (and final) step of an ALJ's analysis, which the ALJ only undertakes *after* finding that the claimant *cannot* perform 'past relevant work.'" *Id*. In this case the ALJ determined at step four that Allen neither possessed nonexertional limitations, nor was incapable of performing past relevant work as a "parts manager, a computer repairer/electronic technician, a delivery driver, light, and an automobile mechanic." (Tr. 61). Thus, Allen's contention that the ALJ failed to assess and account for nonexertional environmental restrictions is without merit.

### iii. Flawed Vocational Analysis

#### a. Failure to "develop the facts fully and fairly" and to follow proper procedure

Allen argues the ALJ's vocational analysis was flawed for two reasons: (1) the ALJ failed to

"'develop the facts fully and fairly'" by calling a vocational expert to testify, and (2) the ALJ failed to follow required procedures before taking administrative notice of occupational data outside the record. (Pl.'s Br. at 20). In support of his first contention Allen cites *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (citing *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995)) in which the Fifth Circuit held that if the commissioner does not satisfy his duty to "develop the facts fully and fairly" his "decision is not substantially justified." *Newton* then held that by relying solely on a "conclusory and unsubstantiated opinion that [the claimant] was not disabled" by a nonexaming medical expert, and his own disbelief of portions of the claimant's testimony, the ALJ failed to fully and fairly develop the record. *Newton*, 209 F.3d at 456, 457. Therefore, the Fifth Circuit held the ALJ's determination of the claimant's lack of disability was not supported by substantial evidence. *Id*. Similarly, in *Ripley* the Fifth Circuit found the ALJ had not fully and fairly developed the facts where the ALJ's determination of the claimant's ability to work was based solely upon the testimony of the claimant himself, and was contrary to the medical record. *Ripley*, 67 F.3d at 557. Consequently, the Fifth Circuit concluded that the ALJ's determination was not supported by substantial evidence. *Id*.

Neither the facts of *Newton* nor *Ripley* are analogous to this case. The ALJ's determination of Allen's ability to perform past relevant work was based upon an examination of Allen's medical record and evidence of his daily activities, grounds sufficient to constitute substantial evidence. (Tr. 58-60); *see Brooks v. Barnhart*, 128 Fed. Appx. 344 (5th Cir. 2005) (unpublished) (holding an examination of medical records and the claimant's daily activities constitutes substantial evidence); *see also* 20 C.F.R. § 404.1560(b)(2) (stating testimony by a vocational expert is not required). In addition, reversal "is appropriate only if the [claimant] shows prejudice from the ALJ's failure to request additional information." *Newton*, 209 F.3d at 458. "'Prejudice can be established by showing that additional

11

evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision.'" *Id.* (quoting *Ripley*, 67 F.3d at 557 n.22 to the effect that whether or not there is prejudice to the claimant may depend upon whether the decision of the ALJ is supported by substantial evidence in the existing record).

In *Newton* the Fifth Circuit found that the claimant had been prejudiced by the ALJ's failure to obtain further information to supplement an incomplete medical record. *Newton*, 209 F.3d at 458. The ALJ here found no similar deficiencies, and his determination based on the existing record was supported by substantial evidence. Thus, Allen's argument that the ALJ did not develop the facts of his case fully and fairly by calling a vocational expert to testify is unfounded.

Allen also contends that the ALJ failed to follow required procedures before taking administrative notice of occupational data outside the record. Allen cites 20 C.F.R. § 404.1566(d), governing administrative notice of job data, and argues that he should have been given notice and an opportunity to respond pursuant to *Sykes v. Apfel*, 228 F.3d 259 (3rd Cir. 2000). 20 C.F.R. § 404.1566(d), however, only applies at step five of the ALJ's analysis. *See Sykes*, 228 F.3d at 274 (holding the government has the burden of establishing that there are jobs in the economy for claimants with particular types of impairments). In the instant case, however, the ALJ concluded at step four that Allen possessed the RFC to perform past relevant work. (Tr. 61, 62). Therefore, this argument misses the mark.

      b.      **Vocational analysis unsupported by substantial evidence**

Allen next argues that the ALJ's determination of his ability to perform past relevant work at step four was improper, because the ALJ's determination of his ability to return to his past relevant

work was not supported by substantial evidence. (Pl.'s Br. at 3). At step four the ALJ determined that Allen possessed the RFC to perform light work and return to his past relevant work as parts manager; a computer repairer/electronic technician; a delivery driver, light; and an automobile mechanic. (Tr. 61). The phrase "past relevant work" is generally defined as skills or abilities obtained through work performed within the last fifteen years, that lasted long enough for an individual to learn it, and constituted substantial gainful activity. 20 C.F.R. § 404.1565; *see Newton*, 209 F.3d at 452-53 (defining "substantial gainful activity" as "work activity involving significant physical or mental abilities for pay or profit.").

In determining whether a claimant can perform past relevant work, the ALJ may consider the description of the past work as actually performed, or as generally performed in the national economy. S.S.R. 82-61 (1982); *see Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990) ("ALJs may take notice of job data in the *Dictionary of Occupational Titles* ('DOT'), which reflects the exertional requirements of a job as performed in the national economy."). Here the ALJ found the evidence indicated that Allen possessed the RFC to perform light work and could return to his occupations as generally performed in the national economy. (Tr. 61). Light work is defined as work involving the:

> [L]ifting of no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.[4]

20 C.F.R. § 404.1567(b).

---

[4] The ALJ concluded, based upon the opinion of the State Agency reviewing physician, "that [Allen] could lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours out of an 8 hour workday, and sit 6 hours out of an 8 hour workday (Exhibit 6F and Exhibit 8F)." (Tr. At 56).

On this point Allen raises several valid arguments. Allen first contends that the ALJ mischaracterized his past employment as a parts manager instead of warehouse manager as he had indicated, and that the ALJ failed to take into consideration the fact that he only held the position for six months when such an occupation possesses a specific vocational preparation (SVP) level of seven (requiring between two and four years to learn). (Tr. 61, 121); (Pl.'s Br. at 21). Allen makes a similar argument with regard to the ALJ's determination of Allen's ability to perform his past relevant work as a computer repairer/electronic technician; employment he had only maintained for ten days, and an occupation which arguably possesses a similar SPV of seven.[5]  (Pl.'s Br. at 22). Therefore, Allen argues that neither occupation should have been considered past relevant work.

As the court noted in *Wyrick v. Apfel*, 29 F. Supp. 2d 693, 700 (M.D.N.C. 1998), the "definition of Specific Vocational Preparation is the 'amount of lapsed time required by a *typical worker* to learn the techniques . . . and develop the facility needed for *average* performance in a specific job-worker situation.'" Thus, "the length of time assigned to each SPV is not meant to be absolute." *Id*. In *Wyrick* the claimant worked for one and a half years in an occupation possessing an SPV of seven. *Id*. The court found this sufficient time for the claimant to have mastered most of the skills at that level, and that the ALJ's determination was therefore supported by substantial evidence. *Id*. at 700-01. In this case, however, Allen was employed respectively for six months and ten days in occupations that both arguably possess an SPV of seven. Given the much larger discrepancies, especially with regard to computer repairer/electronics technician than was present in *Wyrick*, the past relevant work

---

[5] The Dictionary of Occupational Titles does not contain "computer repairer."  It does, however, contain the somewhat analogous occupation of "electronics technician" which possesses an SPV of seven. *See* DOT, Job No. 003.11-014.

determination for either parts manager or computer repairer/electronics technician is not supported by substantial evidence.

The same is true for the ALJ's determination that Allen was capable of performing his past relevant work as an automobile mechanic. (Tr. 61, 62). The DOT classifies automobile mechanic as medium work. The ALJ determined that Allen was capable of light work. (Tr. 61, 62). Medium work therefore, is beyond Allen's functional capabilities. Allen's work history is also consistent with the description of automobile mechanic in the DOT. *See* (Tr. 122); DOT, Job No. 620.261-010; *see also Maharajh v. Barnhart*, 424 F. Supp. 2d 915, 937 (S.D. Tex 2006) (finding automobile mechanic work is typically performed at the medium exertional level); *Watkins v. Schweiker*, 667 F.2d 954, 958 n.2 (11th Cir. 1982) (finding claimant was unable to return to the medium to heavy work required by his past relevant work as an automobile mechanic); *Roman v. Callahan*, 1998 WL 107036, at *4 (S.D.N.Y. 1998) (unpublished) (finding claimant was unable to perform his past work as an automobile mechanic, but was able to perform a full range of light work). The defendant's counter argument that DOT definitions of a job are generic descriptions that offer the approximate maximum requirements for each position rather than their range are against the great weight of existing precedent. *See* (Df.'s Br. 9)[6] (citing *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997)). Consequently, the ALJ's determination that Allen can perform his past relevant work as an automobile mechanic is not supported by substantial evidence.

Allen's final point attacks the accuracy of the ALJ's determination that he possessed the RFC to perform his past relevant work as a delivery driver. Allen contends that the occupational title is

---

[6]Defendant's brief will be cited as "Df.'s Br. __"

15

categorically broad and conflicts with SSR 82-61. SSR 82-61 pertains to:

> Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, eg., "delivery job," or "packaging job," etc. Finding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable. While "delivery jobs," or "packaging jobs," may have a common characteristics, they often involve quite different functional demands and duties requiring varying abilities and job knowledge.

S.S.R. 82-61 (1982). "SSR 82-61 sets out three possible tests for determining whether a claimant retains the capacity to perform past relevant work" at step four. *Hutchison v. Apfel*, 2001 WL 336986, at *10 (N.D. Tex. 2001) (unpublished). Those tests are: (1) whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job; (2) whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it; and (3) whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. *Id*; *see* S.S.R. 82-61 (1982).

In the instant case the ALJ based his conclusion on whether Allen retained the capacity to perform his prior occupations as generally performed in the national economy; not upon whether Allen retained the capacity to perform his past relevant work based on a generic classification of each particular job. (Tr. 61); *see* S.S.R. 82-61 (1982). Thus, Allen's contention is unfounded.

Allen's assertion that ALJ's determination of his ability to perform his past relevant work as a delivery driver was not supported by substantial evidence, however, is not without merit. The ALJ based his determination of Allen's ability to perform his past relevant work as a "delivery driver, light", on his determination that Allen possessed a "light" RFC. (Tr. 61). In turn, the ALJ compared Allen's

RFC to the exertional requirements for delivery driver in the DOT. (Tr. 61). SSR 82-62 states "the RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally sufficient" to establish substantial evidence. S.S.R. 82-62 (1982). The ALJ's reliance upon the DOT for determining Allen's past relevant work, however, was misplaced. The occupation of "delivery driver, light" is not in the DOT. The most analogous DOT occupation to the description provided in Allen's work history is "truck driver, light", an occupation requiring a medium RFC. (Tr. 122); DOT, Job No. 906.683-022.

In *Csanyi v. Barnhart*, 2002 WL 31685728, at *8 (N.D. Ohio 2002) (unpublished), the court held that an ALJ's determination of a claimant's ability to perform his or her past relevant work as a truck driver as it is generally performed in the economy, based on the DOT, was supported by substantial evidence. In this case, however, the DOT does not contain the occupation of "delivery driver, light," and Allen's RFC does not qualify him for the greater exertional occupation of "truck driver, light," an occupation more consistent with his work history and contained within the DOT. Consequently, the ALJ's determination that Allen possessed the RFC to perform his past relevant work as a delivery driver as it is generally performed in the national economy was not supported by substantial evidence

   **iv. Disregard for VA Disability Report**

Allen's next assertion is that the ALJ improperly disregarded the Veterans' Administration's (VA) disability report. As the ALJ properly noted, a disability determination made by another governmental agency such as the Veterans' Administration, is made under its own rules and is not

binding on the Social Security Administration. (Tr. 57); *see* 20 C.F.R. § 404.1504. Despite this, however, the Fifth Circuit has held that "it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). While the Fifth Circuit has sometimes found that such determinations are entitled to "great weight," they have qualified this assertion with the observation that "the relative weight to be given to this type of evidence will vary depending upon the factual circumstances of each case." *Id*. Accordingly, an ALJ need not give "great weight" to a "VA disability determination if [he or she] adequately explain[s] the valid reasons for not doing so." *Id*. The ALJ fulfilled this burden in the instant case.

While not explicitly stating his reason for not according the disability determination "great weight," the ALJ did evaluate the conclusions of Allen's VA physicians, and found their clinical findings inconsistent with Allen's testimony. (Tr. 56-59). The Fifth Circuit affirmed an ALJ's refusal to accord "great weight" to a VA disability report on similar facts in *Chambliss*. In *Chambliss* the Fifth Circuit noted that although it was "not entirely clear from the ALJ's decision, the ALJ apparently found that the VA disability determination and the treating physician's opinion that [the claimant] could not work were 'conclusory'" and lacked an adequate explanation. *Chambliss*, 269 F.3d at 522. Similarly, in *Harrell v. Bowen*, 862 F.2d 471 (5th Cir. 1988), the ALJ considered the VA rating and rejected it because it was "'not well supported by objective evidence.'" *Id*. at 481. The facts of this case are analogous in that the ALJ reviewed the record and stated his belief that the findings of Allen's VA physicians were inconsistent and inadequate. (Tr. 56). Therefore, the ALJ put forth an adequate reason for declining to accord the VA disability determination "great weight."

### iv.     Failure to Reverse on Basis of Post-Hearing Medical Source Statement

Allen's final contention is that the Appeals Council erred in failing to reverse on the basis of a post-hearing medical source statement. Allen's reasoning is inherently flawed. Allen cites 20 C.F.R. § 404.989(a) that states "[w]e will find that there is good cause to reopen a determination or decision if: (1) new and material evidence is furnished; (2) a clerical error in the computation or recomputation of benefits was made; or (3) [t]he evidence that was considered clearly shows . . . that an error was made." Specifically, Allen argues that the Appeals Council's failure to reverse was flawed on the basis that the Council failed to notice the post-hearing medical statement opining Allen's work-related restrictions began in 2001, when the Council held the statement was not new *and* material to the issue of disability before June 30, 2002. (Pl.'s Br. at 28). Allen's argument is fallacious, however, in that Allen presupposes that the statement was material, whereas the Appeals Council determined it was not. Thus, this contention is without merit.

### B.     Step Five

After concluding Allen was not disabled at step four, the ALJ noted that even assuming Allen could not perform the demands of his past relevant work, Allen's medical-vocational profile would have directed a conclusion that jobs Allen was able to perform exist in significant numbers in the national economy. (Tr. 61). During his hypothetical analysis, based solely upon Medical-Vocational Guidelines, the ALJ determined that Allen would not have been found disabled at step five.[7] (Tr. 61) Disability determinations based on Medical-Vocational Guidelines are sufficient to constitute substantial evidence. *See Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (holding an ALJ may rely exclusively on the

---

[7]The ALJ did not include the hypothetical step five determination in his findings. (Tr. 61, 62).

Medical-Vocational Guidelines if a claimant either suffers solely from exertional impairments, or his nonexertional impairments do not significantly affect his RFC); *see also Guzman v. Barnhart*, 159 Fed. Appx. 578 (5th Cir. 2005) (unpublished) (holding the Commissioner's burden may be satisfied by the use of Medical-Vocational Guidelines). The ALJ's step five determination, however, is superfluous to Allen's disability determination. A finding that a claimant is disabled or not disabled at any point during the five-step review is conclusive and terminates the analysis. *Masterson*, 309 F.3d at 272. The ALJ determined Allen was not disabled at step four, and thus concluded Allen's disability determination. (Tr. 61, 62).

## IV.     CONCLUSION

For the foregoing reasons the Commissioner's decision denying benefits is REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g).

Signed on August 10, 2006, at Houston, Texas.

_____
Gray H. Miller
United States District Judge